UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X
                                       :

KATHERINE PRYOR,                  :

                        :

                Plaintiff,    :

            v.              :

                        :

JAFFE & ASHER, LLP, *et al.*,    :

                        :

              Defendants.   :

                        :

------------------------------------------------------------X

13 Civ. 4558 (KPF)

OPINION AND ORDER

**USDC SDNY**
**DOCUMENT**
**ELECTRONICALLY FILED**
**DOC #: _____**
**DATE FILED:  01/15/2014**

KATHERINE POLK FAILLA, District Judge:

Pending before the Court is a motion by Defendants Jaffe & Asher LLP ("Jaffe & Asher") and Jeffrey Tseng (collectively, "Defendants") to dismiss the third, fourth, and fifth claims for relief alleged in the Complaint for failure to state a claim upon which relief can be granted, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  For the reasons set forth in the remainder of this Opinion, this motion is denied.

## BACKGROUND

**A.      Factual Background**

Defendant Jaffe & Asher is a law firm doing business in New York, New York.  (Compl. ¶ 7).[1]  Defendant Jeffrey Tseng, an employee of Jaffe & Asher, served as a director of information technology.  (*Id.* at ¶ 8).  Plaintiff Katherine Pryor ("Plaintiff") began working for Jaffe & Asher, reporting to Defendant Tseng, in November 2012.  (*Id.* at ¶¶ 10, 14).

---

[1]      The facts throughout are drawn, as they must be in a motion to dismiss, from the Complaint.  (Dkt. #1).  *Kelly* v. *Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C.*, 716 F.3d 10, 12 (2d Cir. 2013).

According to Plaintiff, on June 3, 2013, Defendant Tseng invited her to join him at a bar after work. (Compl. ¶ 24). Shortly before receiving this invitation, Plaintiff had been the victim of an episode of domestic violence of which she had informed her superiors, including Defendant Tseng, and she was still suffering the physical and emotional effects of that episode. (*Id.* at ¶¶ 21, 23, 27).

After the two arrived at the bar, Defendant Tseng began asking Plaintiff about her plans for her career. (Compl. ¶ 28). At the beginning of the conversation, Defendant Tseng also stroked Plaintiff's hand in what is alleged to be a sexually suggestive fashion. (*Id.* at ¶ 29). Uncomfortable, Plaintiff rose to leave shortly thereafter. (*Id.* at ¶ 30). Defendant Tseng grabbed Plaintiff, trying to embrace her, and attempted to kiss her on the neck. (*Id.* at ¶ 31). Plaintiff tried to pull away from him; Defendant Tseng "forcibly" pulled her back and succeeded in kissing her on the neck. (*Id.* at ¶ 32). Plaintiff then broke free and departed. (*Id.* at ¶ 33). Plaintiff suffered extreme emotional distress as a result of this incident, and her psychologist has advised her that returning to her employment would have adverse health consequences. (*Id.* at ¶ 35).

## B.     Procedural History

Plaintiff filed the Complaint in this action on July 1, 2013, pleading seven claims for relief: (i) two claims, under the Fair Labor Standards Act, 29 U.S.C. §§ 201-219, and the New York Minimum Wage Act, N.Y. Labor Law §§ 650-665, respectively, alleging Plaintiff's wrongful underpayment by Defendant Jaffe & Asher's failure to pay overtime; (ii) a claim under the New

York State Human Rights Law, N.Y. Exec. Law §§ 290-297 (the "NYSHRL"),

alleging hostile work environment and constructive discharge based on gender

discrimination; (iii) two claims under the New York City Human Rights Law,

N.Y. City Admin. Code §§ 8-101—8-131 (the "NYCHRL"), alleging hostile work

environment and constructive discharge based on both gender and domestic-

violence victim discrimination; (iv) a claim for common-law battery; and (v) a

claim under New York Labor Law §§ 195 and 198 for failure to comply with

state employment notice requirements.  (Dkt. #1).  Plaintiff seeks declaratory

and injunctive relief and damages for lost pay and benefits, medical expenses,

unpaid overtime, compensatory and punitive damages, costs, fees, and

interest.  (*Id.* at 9-10).

By letter dated August 1, 2013, Defendants sought leave to file a motion

to dismiss the third, fourth, and fifth claims for relief, dealing with Plaintiff's

allegations of gender and domestic-violence victim discrimination.  (Dkt. #6).

Plaintiff opposed that application by letter dated August 5, 2013.  (Dkt. #5).

A conference was held on August 28, 2013, where a schedule was set to brief

Defendants' motion to dismiss.

Defendants filed their motion to dismiss on September 17, 2013

(Dkt. #8), accompanied by a declaration (Dkt. #9) and memorandum of law

(Dkt. #10) in its support.  Plaintiff filed a memorandum of law in opposition on

October 18, 2013 (Dkt. #11), and Defendants filed a reply memorandum of law

in further support of their motion to dismiss on November 5, 2013 (Dkt. #13).

**DISCUSSION**

A.    **Applicable Law**

1.    **Motions to Dismiss Generally**

The Court must consider a motion to dismiss by "'construing the complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor.'" *Chase Grp. Alliance LLC* v. *City of New York Dep't of Fin.*, 620 F.3d 146, 150 (2d Cir. 2010) (quoting *Chambers* v. *Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002)). "'To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Kelly*, 716 F.3d at 14 (quoting *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009)). "'A claim has facial plausibility when "'the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Spataro* v. *Glenwood Supply*, 479 F. App'x 403, 404 (2d Cir. 2012) (summary order) (quoting *Iqbal*, 556 U.S. at 678).

2.    **The NYSHRL**

"[C]laims brought under New York State's Human Rights Law are analytically identical to claims brought under Title VII [of the Civil Rights Act of 1964]." *Torres* v. *Pisano*, 116 F.3d 625, 629 n.1 (2d Cir. 1997). A plaintiff claiming relief for a hostile work environment in violation of Title VII must allege facts demonstrating that the treatment in question: "(1) 'is objectively severe or pervasive — that is, ... creates an environment that a reasonable person would find hostile or abusive'; (2) creates an environment 'that the

4

plaintiff subjectively perceives as hostile or abusive'; and (3) 'creates such an environment because of the plaintiff's sex.'" *Patane* v. *Clark*, 508 F.3d 106, 113 (2d Cir. 2007) (quoting *Gregory* v. *Daly*, 243 F.3d 687, 691-92 (2d Cir. 2001)).

The "discriminatory intimidation" of the plaintiff must be "sufficiently severe or pervasive to alter the conditions of his or her work environment." *Rojas* v. *Roman Catholic Diocese of Rochester*, 660 F.3d 98, 106 (2d Cir. 2011) (quoting *Mack* v. *Otis Elevator Co.*, 326 F.3d 116, 122 (2d Cir. 2003)), *cert. denied*, 132 S. Ct. 1744 (2012). "Isolated instances of harassment ordinarily do not rise to this level." *Cruz* v. *Coach Stores, Inc.*, 202 F.3d 560, 570 (2d Cir. 2000), *superseded on other grounds by* Local Civil Rights Restoration Act of 2005, N.Y.C. Local L. No. 85 (2005). If, however, a single incident was "extraordinarily severe," it can suffice to state a claim. *Id.*

The severity of discriminatory conduct "has objective and subjective elements: the misconduct shown must be 'severe or pervasive enough to create an objectively hostile or abusive work environment,' and the victim must also subjectively perceive that environment to be abusive." *Alfano* v. *Costello*, 294 F.3d 365, 374 (2d Cir. 2002) (citing *Harris* v. *Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)).

Useful, though not exclusive, criteria to assess allegations of harassment include: "(1) the frequency of the discriminatory conduct; (2) its severity; (3) whether the conduct was physically threatening or humiliating, or a mere offensive utterance; (4) whether the conduct unreasonably interfered with plaintiff's work; and (5) what psychological harm, if any, resulted." *Richardson*

v. *New York State Dep't of Corr. Serv.*, 180 F.3d 426, 437 (2d Cir. 1999) (internal quotation marks omitted) (quoting *Harris*, 510 U.S. at 23).

Though an individual defendant with supervisory control cannot be personally liable under Title VII, *see Tomka* v. *Seiler Corp.*, 66 F.3d 1295, 1313 (2d Cir. 1995), *abrogated on other grounds by Burlington Indus., Inc.* v. *Ellerth*, 524 U.S. 742 (1998), an individual supervisor may be liable under the NYSHRL and the NYCHRL if he "actually participates in the conduct giving rise to a discrimination claim," *id.* at 1317.  *See also Feingold* v. *New York*, 366 F.3d 138, 158 (2d Cir. 2004) (noting that individual liability exists under the NYSHRL and the NYCHRL if the individual "actually participates in the conduct giving rise to [the] discrimination," or aids and abets same (alteration in original) (internal citation and quotation marks omitted)).

Plaintiffs may also plead constructive discharge arising out of particularly pronounced hostile work environments.  "[A]n employee is constructively discharged when his employer, rather than discharging him directly, intentionally creates a work atmosphere so intolerable that he is forced to quit involuntarily." *Petrosino* v. *Bell Atlantic*, 385 F.3d 210, 229 (2d Cir. 2004).  "Case law generally focuses on two parts of this standard: the employer's intentional conduct and the intolerable level of the work conditions." *Id.*  The latter issue is "assessed objectively by reference to a reasonable person in the employee's position." *Id.* (citing *Pennsylvania State Police* v. *Suders*, 542 U.S. 129, 141 (2004)).

### 3.   The NYCHRL

"'The New York City Human Rights Law was intended to be more protective than the state and federal counterpart.'" *Bermudez* v. *City of New York*, 783 F. Supp. 2d 560, 579 (S.D.N.Y. 2011) (quoting *Farrugia* v. *N. Shore Univ. Hosp.*, 820 N.Y.S.2d 718, 724 (N.Y. Sup. Ct. 2006)).  To state a claim for gender discrimination under the NYCHRL, a "plaintiff need only show differential treatment — that she is treated 'less well' — because of a discriminatory intent." *Mihalik* v. *Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 110 (2d Cir. 2013) (quoting *Williams* v. *New York City Hous. Auth.*, 872 N.Y.S.2d 27, 39 (N.Y. App. Div. 2009)).

"Even if the plaintiff establishes that she was treated 'less well' because of her gender, defendants may assert 'an affirmative defense whereby [they] can still avoid liability if they prove that the conduct complained of consists of nothing more than what a reasonable victim of discrimination would consider 'petty slights and trivial inconveniences.'" *Mihalik*, 715 F.3d at 111 (alteration in original) (quoting *Williams*, 872 N.Y.S.2d at 41).

"In evaluating both the plaintiff's claim and the defendant's affirmative defense, courts must consider the 'totality of the circumstances.  [T]he overall context in which [the challenged conduct occurs] cannot be ignored.'" *Mihalik*, 715 F.3d at 111 (alterations in original) (quoting *Hernandez* v. *Kaisman*, 957 N.Y.S.2d 53, 59 (N.Y. App. Div. 2012)).  Though "a jury is often best suited to make this determination," courts may still dismiss "'truly insubstantial cases,'

Case 1:13-cv-04558-KPF   Document 15   Filed 01/15/14   Page 8 of 19


where the defense is clear as a matter of law." *Id.* (quoting *Williams*, 872 N.Y.S.2d at 41).

## B.     Application

### 1.     Plaintiff's Allegations State a Claim for Hostile Work Environment Under the NYSHRL

There can be no disagreement that, if true, the event Plaintiff describes is disgusting and unacceptable.[2]  Whether the objective character of Plaintiff's allegations rise to the level of extraordinary severity, however, is a close and difficult question.[3]  Nonetheless, the Court cannot conclude that, taken as true, they are so inadequate as to warrant dismissal.  Though these allegations may not ultimately lead to liability, they are not deficient as a matter of law; assessment of such intermediate allegations is best left to a jury.  The Court accordingly will deny Defendants' motion to dismiss.

Applicable local case law illustrates the inconsistency of treatment received by similar motions to dismiss.  Defendants, for example, point to *Davis* v. *Phoenix Ancient Art, S.A.,* 39 Misc.3d 1214(A) (Table), 2013 WL 1729384, at *1 (N.Y. Sup. Apr. 22, 2013), in which a New York court examined allegations that a defendant supervisor "came to plaintiff's hotel room, grabbed her and demanded that she sleep with him and then forcibly kissed her."  (Def. Reply 4-5).  *Davis* presents, if anything, even more appalling allegations: the supervisor

---

[2]     Defendants only mount two attacks against the adequacy of the Complaint: an assault on the severity of the allegations, and a fatally belated and legally flawed argument regarding whether she has adequately pled that she was mistreated "because of" her protected status.  They do not argue that any other aspect of the Complaint is deficient.

[3]     Defendants do not dispute that Plaintiff perceived the encounter to be severely abusive.

approached the plaintiff in her private hotel room and demanded that she

engage in intercourse, in addition to kissing her.  Moreover, an alleged

longstanding pattern of sexually explicit questions and comments by the

supervisor and clients had arguably already contributed to a distressing

sexualization of the work environment.  *Id.*  Nonetheless, the court dismissed

the case for failure to state a claim, concluding that "the alleged one-time

incident" and previous series of sexual questions and comments, "while

offensive, were too isolated and occasional to rise to an actionable level under

NYSHRL." *Id.* at *6.

Plaintiff, on the other hand, offers *Scott* v. *City of New York Dep't of

*Correction,* 641 F. Supp. 2d 211, 220 (S.D.N.Y. 2009), *aff'd sub nom. Scott* v.

*New York City Dep't of Correction,* 445 F. App'x 389 (2d Cir. 2011) (summary

order).  (Pl. Opp. 4).  In *Scott,* a female police officer arrived at the office of her

union's president in advance of her disciplinary hearing.  The defendant invited

the officer into his office,

> grabbed her around her waist and then put his tongue
> in [her] mouth.  [The plaintiff] pushed him away and
> told him to stop.  He did it again, and she again told
> him to stop.  She backed away from him and he said
> "okay, okay." He then said to her "take off your clothes
> and put on your uniform right now in front of me."

*Id.* at 220 (alterations in original, citations omitted).  The court concluded that,

where the plaintiff was facing a disciplinary hearing at which she would be

represented by a union lawyer, and was meeting with that union's president

solely for "the purpose of gaining assistance and advice[,] … a reasonable jury

could conclude" that these allegations constituted an "extraordinarily severe" single incident. *Id.* at 225-26 (internal quotation marks omitted).

Though the *Scott* allegations seem remarkably analogous to those pled in *Davis*, the two cases came to opposite results. This pair of decisions, taken from the universe of muddled case law confronting similar facts, illustrates just how context-dependent and frequently inconsistent judicial decisionmaking of this kind can be.

Sometimes, shocking behavior that seems self-evidently to satisfy the standard of "alter[ing] the conditions of ... [the] work environment," *Rojas*, 660 F.3d at 106, fails to state a claim. *See, e.g., Prince* v. *Cablevision Sys. Corp.*, No. 04 Civ. 8151 (RWS), 2005 WL 1060373, at *7-10 (S.D.N.Y. May 6, 2005) (granting a motion to dismiss hostile work environment claims based on allegations that a senior employee made sexual advances toward the plaintiff, solicited her for sex, and tried to kiss her and put his tongue down her throat). Other circumstances presenting apparently less atrocious behavior nonetheless suffice to survive judicial disposition. *See, e.g., Howley* v. *Town of Stratford*, 217 F.3d 141, 154 (2d Cir. 2000) (reversing a lower court's grant of summary judgment for defendants based on allegations that a subordinate had engaged in a public tirade against his female supervisor involving sexist expletives and implications of her sexual misconduct).

These decisions often lack any standard easily applied to other cases. Ultimately, they reveal how difficult it is for courts to perform the extraordinarily sensitive and comprehensive analysis necessary to assess a

total set of workplace circumstances and determine whether a particular set of words and actions were enough to make that workplace a different, less tolerable environment for the victimized party. *See Terry* v. *Ashcroft*, 336 F.3d 128, 148 (2d Cir. 2003) (noting that the test for hostile workplace claims is whether "a reasonable employee would find the conditions of her employment altered for the worse" (quoting *Whidbee* v. *Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 70 (2d Cir. 2000))).

The allegations here are not so clearly outrageous as to spell certain liability for Defendants. *See Ferris* v. *Delta Air Lines, Inc.*, 277 F.3d 128, 136 (2d Cir. 2001) (finding that a single incident of rape can create a hostile work environment). Nor are they so fundamentally insignificant as to make dismissal a foregone conclusion. *See Oncale* v. *Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998) (noting that Title VII does not prohibit "ordinary socializing in the workplace — such as male-on-male horseplay or intersexual flirtation"). Their objective severity is ambiguous. And "'[e]valuation of ambiguous acts'" is a task "'for the jury,'" not for the Court. *Redd* v. *New York Div. of Parole*, 678 F.3d 166, 174 (2d Cir. 2012) (alteration in original) (quoting *Holtz* v. *Rockefeller & Co.*, 258 F.3d 62, 75 (2d Cir. 2001)); *see also Terry*, 336 F.3d at 148 (warning "against setting the bar too high" for hostile work environment claims).

The Court cannot conclude, as a matter of law, that an incident of this intermediate albeit revolting character is without question insufficiently severe to state a claim for hostile work environment. "'The fact that the law requires

harassment to be severe or pervasive before it can be actionable does not mean that employers are free from liability in all but the most egregious of cases.'" *Whidbee*, 223 F.3d at 70 (quoting *Torres*, 116 F.3d at 631 (2d Cir. 1997)).  This is not the most egregious of cases; it also is not a circumstance in which Defendants are obviously free from potential liability.  Thus Defendants' motion to dismiss is denied.

**2.      Plaintiff's Allegations State a Claim for Hostile Work Environment Under the NYCHRL**

The NYCHRL is expressly "'more protective'" than the NYSHRL. *Bermudez*, 783 F. Supp. 2d at 579 (quoting *Farrugia*, 820 N.Y.S.2d at 724). Employers may only avoid liability under the NYCHRL for conduct that results in an employee being treated "less well" because of her gender, *Mihalik*, 715 F.3d at 110 (quoting *Williams*, 872 N.Y.S.2d at 39), when the conduct complained of constitutes nothing more than "'petty slights and trivial inconveniences,'" *id.* at 111 (quoting *Williams*, 872 N.Y.S.2d at 41).  Because Plaintiff has adequately pled a claim under the NYSHRL, she has also done so under the NYCHRL.  *See Winston* v. *Verizon Servs. Corp.*, 633 F. Supp. 2d 42, 48 (S.D.N.Y. 2009) ("if a plaintiff successfully states a claim under the NYSHRL, then '[a] fortiori' she has stated a claim under the NYCHRL" (alteration in original) (quoting *Brightman* v. *Prison Health Servs., Inc.*, 878 N.Y.S.2d 357, 358 (N.Y. App. Div. 2009))).

Defendants make two different arguments seeking to dismiss Plaintiff's NYCHRL allegations.  First, in their opening brief, they contend that Plaintiff's

allegations "fall[] squarely within the meaning of a petty slight or trivial inconvenience," and so should not be actionable.  (Def. Br. 10 (internal quotation marks omitted)).  Given the repellent nature of Plaintiff's allegations, the suggestion that, if true, they constitute a "trivial inconvenience" is a surprising position and one which cannot succeed.  After all, "if a claim is viable under the NYSHRL, it is as a matter of law viable under the NYCHRL, and there is no need for further inquiry."  *Winston*, 633 F. Supp. 2d at 48.

Separately, Defendants make quite a different argument, offered for the first time in their reply brief: that Plaintiff failed, as she must, to plead adequately that the conduct alleged in the Complaint was performed "**because** of some factor prohibited by the statute."  (Def. Reply 9 (emphasis in Defendants' brief)).  *See Zick* v. *Waterfront Comm'n of New York Harbor*, No. 11 Civ. 5093 (CM), 2012 WL 4785703, at *8 (S.D.N.Y. Oct. 4, 2012) ("In order to state a claim under the NYCHRL, Plaintiff must allege that she has been treated less well than other employees *because* of membership in a protected class." (emphasis in original) (internal quotation marks and citation omitted)).

This argument fails for two reasons.  First, "[i]t is well established … that a court should not 'consider arguments that are raised for the first time in a reply brief.'"  *Mateo* v. *Bristow*, No. 12 Civ. 5052 (RJS), 2013 WL 3863865, at *8 (S.D.N.Y. July 16, 2013) (quoting *Clubside, Inc.* v. *Valentin*, 468 F.3d 144, 159 n.5 (2d Cir. 2006)).  Defendants have waived this argument.

Even if not waived, Defendants would find no shelter in this alternative attack on Plaintiff's NYCHRL claims.  Defendants argue that Plaintiff did not

13

allege that she was discriminated against because of her gender or her status as a domestic violence victim.  Plaintiff's Complaint, however, refutes this argument.  (Compl. ¶¶ 34, 52, 58).  The only authority Defendants present for their position is a case in which the plaintiff did not "even alleg[e] that [the defendants'] conduct was motivated by her" protected status.  *Zick*, 2012 WL 4785703, at *8.  That is not the case here.  *Cf. Harris* v. *NYU Langone Med. Ctr.*, No. 12 Civ. 454 (RA) (JLC), 2013 WL 3487032, at *27 (S.D.N.Y. July 9, 2013), *report and recommendation adopted as modified*, No. 12 Civ. 454 (RA), 2013 WL 5425336 (S.D.N.Y. Sept. 27, 2013) (granting a motion to dismiss NYCHRL hostile work environment claims when the plaintiff made "no allegations that she was disciplined … *because of* her race or disability" (emphasis in original)).  Here Plaintiff has expressly alleged that the treatment giving rise to her suit was motivated by her protected status.

Even beyond the specific allegations noted above, the facts alleged throughout the Complaint easily permit the Court to infer, drawing all reasonable inferences in Plaintiff's favor, *Wilson* v. *N.Y. City Dep't of Corr.*, No. 11 Civ. 9157 (PAE), 2013 WL 922824, at *1 (S.D.N.Y. Mar. 8, 2013), that the conduct of which Plaintiff complains was based on prohibited factors.

First, the allegations in the Complaint support the inference that Defendants' conduct was motivated by Plaintiff's gender.  It is certainly the case that not all humans are sexually attracted to persons of the opposite gender, but many are.  Here, a male supervisor asked a female employee out to a bar, stroked her hand in a sexual manner, and twice attempted (and once

succeeded) to kiss her on the neck.  (Compl. ¶¶ 24, 29, 31, 32).  Any reasonable observer, if asked what motivated this encounter, would almost certainly answer that the male supervisor's actions were prompted by the female employee's gender, not by her interest in collecting stamps or her affection for a particular sports team.  Courts have even found that the NYCHRL's requirement of discrimination "because of" gender can be satisfied by allegations of entirely non-physical work interactions with sexual content or undertones.  *See, e.g.*, *Bermudez,* 783 F. Supp. 2d at 588 (denying motion to dismiss hostile work environment claim under the NYCHRL regarding "comments," the "majority of [which] were sexual in nature," that made a female coworker uncomfortable).  These allegations adequately sustain the inference that the discriminatory treatment was gender-based.

Second, Plaintiff's allegations equally support the inference that her status as a victim of domestic violence played a role in prompting the discriminatory conduct of which she complains.  She alleges that, after working at Defendant Jaffe & Asher for six months, she experienced an episode of domestic violence.  (Compl. ¶¶ 14, 21).  One week later, still visibly injured and distressed by this episode (*id.* at ¶¶ 24, 27), Defendant Tseng invited her to a bar for a drink, asked her about her career, made sexual advances, and sought to kiss her (*id.* at ¶¶ 24, 28, 29, 31, 32).  The Court can infer from these facts that Plaintiff's recent and still self-evident status as a victim of domestic violence played a role in Defendant Tseng's actions — as, indeed, Plaintiff expressly pleads elsewhere in the Complaint.  (*Id.* at ¶¶ 26, 34).

Defendants have waived this argument and the Court need not consider it.  Even had it not been waived, it is wrong: Plaintiff has adequately pled that she was discriminated against based on her gender and her status as a domestic violence victim.

### 3.    Plaintiff's Allegations State a Claim for Constructive Discharge Under Both the NYSHRL and the NYCHRL

Plaintiff also pleads a claim for constructive discharge under both state and city law, arising from the conditions of the hostile work environment she alleges.  (Compl. ¶¶ 46-62).  "An employee is constructively discharged when his employer, rather than discharging him directly, intentionally creates a work atmosphere so intolerable that he is forced to quit involuntarily."  *Terry*, 336 F.3d at 151-52 (citations omitted).  "The inquiry is objective: Did working conditions become so intolerable that a reasonable person in the employee's position would have felt compelled to resign?"  *Pennsylvania State Police*, 542 U.S. at 141.

Work conditions are "'intolerable'" if they are so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign.  *Whidbee*, 223 F.3d at 73 (quoting *Chertkova* v. *Connecticut Gen. Life Ins. Co.*, 92 F.3d 81, 89 (2d Cir. 1996).  Constructive discharge claims face a "demanding" standard, *Miller* v. *Praxair, Inc.*, 408 F. App'x 408, 410 (2d Cir. 2010) (summary order), "even higher than that required to prevail on a hostile environment claim," *Mandel* v. *Champion Int'l Corp.*, 361 F. Supp. 2d 320, 327 (S.D.N.Y. 2005).

The parties took a curious approach to briefing the constructive
discharge claims.  Defendants argue only that if Plaintiff fails to state a claim
for hostile work environment, "she necessarily fails to state a claim for
constructive discharge where such claim is based upon a hostile work
environment." (Def. Br. 9).  This is certainly a correct statement of the law, so
far as it goes.  As the bar for constructive discharge claims is higher than that
for hostile work environment, pleadings that fail to pass muster under the less
rigorous standard must also be found inadequate under the more demanding.

Because the Court has concluded that the hostile work environment
claims should survive, however, Defendants' failure to make any argument
about the independent validity of the constructive discharge claims leaves their
briefing unhelpful on this point.  Indeed, Defendants' reply brief does not even
refer to the constructive discharge claims except in passing, and with no
argument or analysis.

Plaintiffs understandably, given Defendants' near-silence on this issue,
mount a less than full-throated defense of the constructive discharge claims,
arguing only that "the allegations here are comparable to cases in which courts
have refused to dismiss constructive discharge claims" (Pl. Opp. 10), with a
single citation in support of that argument.

Given Defendants' failure to make a legitimate attack on the constructive
discharge claims standing alone, the Court could fairly take Defendants at
their word and simply decline to review the independent validity of these

17

claims.  Even so, the Court will undertake an assessment of Plaintiff's allegations with respect to constructive discharge.

Defendants' motion must fail.  Just as above, Plaintiff's allegations with respect to constructive discharge have an intermediate character.  Whether a reasonable person in Plaintiff's position would have felt obliged to resign after Defendant Tseng subjected her to sexual advances and made several forcible attempts to kiss her is a difficult question.  Nonetheless, the Court cannot conclude that, as a matter of law, Plaintiff's allegations are insufficient to proceed with these claims.  *Cf., e.g., Copantitla* v. *Fiskardo Estiatorio, Inc.*, 788 F. Supp. 2d 253, 301 (S.D.N.Y. 2011) (denying summary judgment because "the Court cannot say that no reasonable jury would find that being rubbed with a supervisor's genitals, even if for ten seconds, would cause [a plaintiff's] working conditions to be such that he would feel compelled to resign").  Accordingly Defendants' motion to dismiss is also denied with respect to the constructive discharge claims.

**CONCLUSION**

For the reasons set forth above, Defendants' motion to dismiss is DENIED in its entirety.  Defendants shall file and serve their Answer to the Complaint within 14 days of the date of this Order, pursuant to Rule 12(a)(4)(A) of the Federal Rules of Civil Procedure.  The Clerk of Court is directed to terminate Docket Entry 8.

SO ORDERED.

Dated: January 15,  2014
       New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge