UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KATHERINE PRYOR,

                Plaintiff,

      -against-

JAFFE & ASHER LLP and
JEFFREY TSENG,

           Defendants.

Case No. 13-Civ- 4558 (KPF)


Oral Argument Requested


# MEMORANDUM OF LAW IN SUPPORT OF
## JAFFE & ASHER LLP'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Gregory E. Galterio

JAFFE & ASHER LLP
600 Third Avenue, Ninth Floor
New York, New York 10016
Telephone:  (212) 687-3000
Facsimile: (212) 687-9639
ggalterio@jaffeandasher.com

*Attorneys for Defendant*
*Jaffe and Asher LLP*

# <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS ................................................................................................... i

TABLE OF AUTHORITIES ........................................................................................... ii

PRELIMINARY STATEMENT ....................................................................................... 1

THE FACTS ...................................................................................................................... 5

    1. Pryor's Deposition Testimony And Other Admissions ......................................... 5

    2. Dr. Scholler's Testimony ..................................................................................... 7

    3. Ms. Tatlybaeva's Testimony ................................................................................ 9

    4. J&A's Efforts to Accommodate Pryor ................................................................ 10

ARGUMENT .................................................................................................................. 11

  I. J&A IS ENTITLED TO SUMMARY JUDGMENT ON
     PRYOR'S CLAIMS FOR HOSTILE WORK ENVIRONMENT
     AND CONSTRUCTIVE DISCHARGE UNDER THE NYSHRL ..................................... 11

    A. Hostile Work Environment ............................................................................ 11

    B. Constructive Discharge .................................................................................. 18

  II. J&A IS ENTITLED TO SUMMARY JUDGMENT ON PRYOR'S
     CLAIMS FOR HOSTILE WORK ENVIRONMENT AND
     CONSTRUCTIVE DISCHARGE UNDER THE NYCHRL .............................................. 19

    A. Constructive Discharge .................................................................................. 19

    B. Hostile Work Environment ............................................................................ 20

  III. J&A IS ENTITLED TO ASSERT THE FARAGHER/ELLERTH DEFENSE
     AND SHOULD BE PERMITTED TO AMEND ITS ANSWER IF NECESSARY
     TO DO SO ..................................................................................................... 22

    A. The Defense .................................................................................................. 22

    B. No Amendment Is Required........................................................................... 23

    C. Amendment .................................................................................................. 24

CONCLUSION ............................................................................................................... 25

# TABLE OF AUTHORITIES

## CASES

Adamczyk v. City of Buffalo,
    1998 WL 89342 (W.D.N.Y.1998) ........................................................................ 25

Akonji v. Unity Healthcare, Inc.,
    517 F.Supp.2d 83 (D.D.C.2007) ......................................................................... 15

Alfano v. Costello,
    294 F.3d 365 (2d Cir.2002)................................................................................. 12

Anderson v. Davis Polk & Wardwell LLP,
    2013 WL 1809443 (S.D.N.Y. Apr 29, 2013) (NO. 10 CIV. 9338 NRB) .............................. 12

Ardigo v. J. Christopher Capital, LLC,
    2013 WL 1195117 (S.D.N.Y. Mar 25, 2013) ........................................................... 21

Audrey v. Career Inst. of Health & Tech.,
    No. 06–CV–5612, 2010 WL 10094570 (E.D.N.Y. Jan. 12, 2010)........................................ 22

Barnum v. New York City Transit Authority,
    62 A.D.3d 736, 878 N.Y.S.2d 454 (2d Dep't 2009) ................................................... 22

Brooks v. City of San Mateo,
    229 F.3d 917 (9th Cir.2000) .............................................................................. 14

Burlington Industries, Inc. v. Ellerth,
    524 U.S. 742, 118 S. Ct. 2257 (1998)................................................................. 1, 22

Byrnie v. Town of Cromwell, Bd. of Educ.,
    243 F.3d 93 (2d Cir.2001)................................................................................. 11

Cajamarca v. Regal Entertainment Group,
    863 F.Supp.2d at 248 ....................................................................................... 23

Caleshu v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,
    737 F.Supp. 1070 (E.D.Mo. Mar 30, 1990),
    aff'd, 985 F.2d 564 (8th Cir.1991),
    cert. denied, 504 U.S. 918, 112 S.Ct. 1963 (1992) ................................................... 15

Campbell v. Cellco Partnership,
    860 F.Supp.2d 284 (S.D.N.Y. Feb 07, 2012)........................................................ 20

Caridad v. Metro–North Railroad,
    191 F.3d 283 (2d Cir.1999)............................................................................... 22

Carter v. State of New York,
    151 Fed. Appx. 40 (2d Cir. 2005) ..................................................................... 13

Chavers v. Shinseki,
    667 F.Supp.2d 116 (D.D.C. Nov 05, 2009) ....................................................... 15

Cook v. New York City Department of Education,
    90 Fed. Appx. 562 (2d Cir. 2004) ..................................................................... 13

Cruz v. Coach Stores, Inc.,
    202 F.3d 560 (2d Cir. 2000)............................................................................... 12

Davis-Bell v. Columbia University,
    851 F.Supp.2d 650 (S.D.N.Y.), appeal dismissed (2d Cir. 2012).......................... 20

Diagne v. New York Life Ins. Co.,
    2010 WL 5625829 (S.D.N.Y. Dec. 8, 2010) ...................................................... 21

E.E.O.C. v. Bloomberg L.P.,
    2014 WL 2112038 (S.D.N.Y. Apr 28, 2014)...................................................... 19

Edwards v. Huntington Union Free School Dist.,
    957 F. Supp.2d 203 (E.D.N.Y. 2013) ................................................................ 18

Faragher v. City of Boca Raton,
    524 U.S. 775,118 S.Ct. 2275 (1998)............................................................ 1, 12

Feliciano v. Alpha Sector, Inc.,
    2002 WL 1492139 (S.D.N.Y.2002).................................................................. 13

Fincher v. Depository Trust & Clearing Corp.,
    604 F.3d 712 (2d Cir.2010).............................................................................. 18

Finnerty v. William H. Sadlier, Inc.,
    176 Fed. Appx. 158 (2d Cir. 2006) ................................................................... 23

Fowler v. District of Columbia,
   404 F.Supp.2d 206 (D.D.C.2005), aff'd, 210 Fed. Appx. 4 (D.C.Cir.2006)...........................15

Fullwood v. Assoc. for the Help of Retarded Children, Inc.,
   08 Civ. 6739(DAB), 2010 WL 3910429 (S.D.N.Y. Sept. 28, 2010).......................................21

Gaffney v. City of New York,
   101 A.D.3d 410, 955 N.Y.S.2d 318 (1st Dep't 2012) .............................................................18

Gibson v. Potter,
   264 Fed. Appx. 397 (5th Cir.2008).........................................................................................14

Harris v. NYU Langone Medical Center,
   2013 WL 3487032 (S.D.N.Y. Jul 09, 2013) ...........................................................................20

Head v. Vilsack,
   2013 WL 183687 (E.D.N.C. Jan 17, 2013) .............................................................................15

Hockman v. Westward Communications, LLC,
   407 F.3d 317 (5th Cir.2004) ...................................................................................................14

Hopkins v. Balt. Gas & Elec. Co.,
   77 F.3d 745 (4th Cir.1996) .....................................................................................................14

Howard v. City of Robertsdale,
   168 Fed. Appx. 883 (11th Cir. 2006).......................................................................................24

Howley v. Town of Stratford,
   217 F.3d 141 (2d Cir.2000)..................................................................................................3, 17

Kelly v. Howard I. Shapiro & Associates Consulting Engineers, P.C.,
   716 F.3d 10 (2d Cir. 2013).......................................................................................................11

Kim v. Goldberg, Weprin, Finkel, Goldstein, LLP,
   120 A.D.3d 18, 987 N.Y.S.2d 338 (1st Dep't 2014) ..............................................................20

Lambert v. Macy's East, Inc.,
   34 Misc.3d 1228(A), 951 N.Y.S.2d 86 (Sup. Ct. Kings Co. 2010),
   aff'd, 84 A.D.3d 744, 922 N.Y.S.2d 210 (2d Dep't 2011) ................................................19, 20

LeGrand v. Area Resources for Community & Human Services,
    394 F.3d 1098 (8th Cir.2005) .................................................................. 14

Lozosky v. Keystone Business Products, Inc.,
    2013 WL 5744896 (M.D. Pa. Oct 23, 2013) ........................................... 16

Mark v. Mount Sinai Hosp.,
    85 F. Supp.2d 252 (S.D.N.Y. Feb 18, 2000)........................................... 13

Mathirampuzha v. Potter,
    548 F.3d 70 (2d Cir. 2008)....................................................................... 12

McGraw v. Wyeth–Ayerst Labs., Inc.,
    1997 WL 799437 (E.D.Pa. Dec. 30, 1997).............................................. 15

McPherson v. N.Y.C. Dep't of Educ.,
    457 F.3d 211 (2d Cir.2006)...................................................................... 11

Middle Atlantic Utilities Co. v. S.M.W. Dev. Co.,
    392 F.2d 380 (2d Cir.1968)...................................................................... 24

Morales-Evans v. Administrative Office of the Courts of New Jersey,
    102 F.Supp.2d 577 (D.N.J. 2000) ............................................................ 15

Murray v. City of Winston-Salem, North Carolina,
    203 F.Supp.2d 493 (M.D.N.C. 2002) ...................................................... 15

Paul v. Northrop Grumman Ship Systems,
    309 Fed.Appx. 825(5th Cir. 2009)........................................................... 14

Pennsylvania State Police v. Suders,
    542 U.S. 129, 124 S.Ct. 2342, 159 L.Ed.2d 204 (2004)............................ 18, 22, 23

Petrosino v. Bell Atl.,
    385 F.3d 210 (2d Cir.2004)...................................................................... 18

Phillip v. City of New York,
    2012 WL 1356604 (E.D.N.Y. Apr 19, 2012) ......................................... 20

Price v. Cushman & Wakefield, Inc.,
   829 F.Supp.2d 201 (S.D.N.Y. 2011).................................................................... 20

Prince v. Cablevisions Sys. Corp.,
   No. 04 Civ. 8151(RWS), 2005 WL 1060373 (S.D.N.Y. May 6, 2005) .................. 13

Saidu-Kamara v. Parkway Corp.,
   155 F.Supp.2d 436 (E.D.Pa. 2001) ...................................................................... 15

Salahuddin v. Goord,
   467 F.3d 263 (2d Cir.2006)................................................................................... 11

Sales v. YM & YWHA of Washington Heights and Inwood,
   2003 WL 164276 (S.D.N.Y.2003).......................................................................... 13

Saxton v. AT & T Co.,
   10 F.3d 526 (7th Cir. 1993) ............................................................................. 14, 15

Scott v. City of New York D.O.C.,
   641 F.Supp.2d 211 (S.D.N.Y.2009)............................................................. 3, 16, 17

Short v. Deutsche Bank Sec., Inc.,
   79 A.D.3d 503 913 N.Y.S.2d 64 (1st Dep't 2010) ................................................ 19

State Teachers Ret. Bd. v. Fluor Corp.,
   654 F.2d 843 (2d Cir.1981).................................................................................. 24

Summa v. Hofstra University,
   708 F.3d 115 (2d Cir. 2013)...................................................................................

Tatum v. Hyatt Corp.,
   918 F. Supp. 5 (D.D.C.1994) ............................................................................... 15

Uppal v. Hospital Corp. of America,
   482 Fed.Appx. 394 (11th Cir. 2012)..................................................................... 14

Vito v. Bausch & Lomb Inc.,
   403 Fed. Appx. 593 (2d Cir. 2010)....................................................................... 12

Vysovsky v. Glassman,
    2007 WL 3130562 (S.D.N.Y. Oct 23, 2007) ........................................................... 24

Weiss v. Coca–Cola Bottling Co.,
    990 F.2d 333 (7th Cir. 1993) .................................................................................... 15

Wilson v. N.Y.P. Holdings, Inc.,
    05 Civ. 10355(LTS), 2009 WL 873206 (S.D.N.Y. Mar. 31, 2009) ......................... 21

Wilson v. New York City Police Dept.,
    2013 WL 878585 (S.D.N.Y. Feb 06, 2013) (NO. 09 CIV. 2632 ALC HBP),
    report and recommendation adopted, 2013 WL 929654 (S.D.N.Y. Mar 11, 2013) .............. 13

Yee Sing Li v. Educ. Broad. Corp.,
    Index No. 115948/2010, 2011 N.Y. Misc. LEXIS 3522 (N.Y. Sup.Ct. June 30, 2011) ... 20, 21

## STATUTES AND RULES

Fed. R. Civ. P. 15 ................................................................................................... 1, 24

Fed. R. Civ. P. 56 ................................................................................................... 1, 11

New York City Human Rights Law ............................................................... 1, 4, 19, 20, 21

New York State Human Rights Law ................................... 1, 2, 4, 11, 12, 18, 19, 20, 22

## PRELIMINARY STATEMENT

Defendant Jaffe & Asher LLP ("J&A") submits this memorandum of law in support of its motion for partial summary judgment pursuant to Fed. R. Civ. P. 56 dismissing the third, fourth and fifth claims for relief asserted in the complaint of plaintiff Katherine Pryor ("Pryor").  This memorandum is also submitted in support of J&A's motion, if necessary, to amend its answer pursuant to Fed. R. Civ. P. 15 to specify that its second affirmative defense of mitigation includes the defense articulated under the cases of Burlington Industries, Inc. v. Ellerth, 524 U.S. 742, 118 S. Ct. 2257 (1998),  and Faragher v. City of Boca Raton, 524 U.S. 775 (1998).

Pryor is a former employee of J&A who falsely alleges that she was sexually harassed by her supervisor, defendant Tseng.  Her complaint attempts to assert seven claims for relief.  The third through fifth claims for relief seek damages for alleged hostile work environment and constructive discharge under the New York State Human Rights Law ("NYSHRL") and the New York City Human Rights Law ("NYCHRL") based upon gender discrimination and domestic violence victim discrimination.  It is those claims only that are the subject of this motion.

Pryor's claims purport to be based upon a single, isolated incident.  Pryor's own testimony (which is disputed by Tseng) limits the incident to Tseng touching Pryor's hand, and giving her a hug and a supposed kiss on the neck while saying goodbye as she departed from a restaurant on June 3, 2013.  There is no dispute that the incident was extremely brief in duration, took place in a social setting outside the office after normal business hours, and no other J&A employees were present at the time.  There is no dispute that, although the restaurant was virtually empty at the time of the alleged incident, the waitress who served Pryor and Tseng – who was within 15 feet of Pryor and Tseng at all relevant times – saw nothing, and has no recollection of anything untoward happening.

It is undisputed that there were no other incidents of harassment or discrimination between Pryor and Tseng, or Pryor and any other J&A employee.  It is undisputed that no adverse employment action was taken against Pryor.  Indeed, there is no dispute that Pryor, who had been physically assaulted by her boyfriend a week prior to the incident with Tseng, was expected to return to work after taking an emergency leave of absence to recover from that physical assault.  Pryor wrote various emails to various J&A employees, including Tseng, indicating that she was coming back to work.  She also testified that she was ready to come back to work if her supervisor was switched from Tseng to someone else.  However, Pryor ultimately reversed her position and chose not to return to work.

There is no dispute that J&A has an office manual that sets forth its policy against any kind of discrimination and/or harassment, including that of a sexual or gender-based nature. There is no dispute that Pryor received and signed that manual.

There is no dispute that J&A offered to work with Pryor to allay any of her concerns about returning to work before this lawsuit was commenced.  The firm offered to tailor a satisfactory solution to the issue, which included a willingness to change Pryor's supervisor and/or move her to a different floor of the firm.

Finally, Pryor's own psychologist testified that, perhaps the most pivotal allegation in Pryor's complaint – his allegedly advising her that returning to work was unsafe because of the incident with Tseng – is not truthful.  In fact, he never made such a statement.  He testified that he was concentrating on protecting Pryor from future harm at the hands of her boyfriend.

As demonstrated at Point IA below, as a matter of law, a claim for hostile work environment under the NYSHRL must meet the "objectively severe or pervasive" standard. Based upon the undisputed facts, as well as settled law, Pryor cannot meet this standard.

The Supreme Court requires that a single incident must be "extraordinarily severe" in order to support a hostile work environment claim.  A single incident cannot be extraordinarily severe as a matter of law unless it materially alters the plaintiff's employment.  Here, there simply is no evidence that Tseng's conduct was "extraordinarily severe."

Unlike the cases previously cited by this Court in denying J&A's motion to dismiss, this is not a situation where Tseng forced his tongue into Pryor's mouth and demanded that she undress in front of him.  See Scott v. City of New York D.O.C., 641 F.Supp.2d 211, 226 (S.D.N.Y.2009). Nor is this a case where Tseng's conduct took place in the presence of other J&A employees, where her position and/or authority in the firm was forever undermined as a result thereof.  See Howley v. Town of Stratford, 217 F.3d 141, 154-55 (2d Cir.2000).   Instead, this case involves a single incident that took place away from the office in which no other employee of J&A was present.  It was a social situation in which a touch on the hand and a hug and kiss goodbye was not out of the ordinary, even if unwelcome.

It is one thing for the Court to find that Tseng's conduct was inappropriate.  It is quite another for it to say that Pryor can establish that Tseng's conduct materially altered her employment.  There is no evidence to create a triable issue of fact as to the latter, and no rational juror could conclude otherwise.  Thus, viewing the facts in the light most favorable to Pryor, even if Tseng's conduct was inappropriate, it was not actionable as a matter of law.

As demonstrated at Point IB below, as a matter of law, a plaintiff seeking recovery on a claim of constructive discharge must not only prove a hostile work environment, but also that her working conditions were so intolerable that a reasonable person in her position would be forced to quit.   Based upon the undisputed facts and settled law, Pryor cannot meet this standard.

Not only is Pryor incapable of proving a hostile work environment because the single incident in question was not "extraordinarily severe," but it cannot be said under any set of facts or circumstances that the incident created an objectively intolerable working condition.  Indeed, Pryor's constructive discharge claim is premised entirely upon the allegation that her psychologist advised her that returning to work would be detrimental to her health.  Yet, her psychologist testified that this allegation is untrue, and it is also contradicted by Pryor's own admissions that she was going to return to work notwithstanding the incident.

As demonstrated at Point II below, Pryor has also failed to raise a triable issue of fact sufficient to sustain her claims under the NYCHRL.  First, her claim for constructive discharge under that statute fails for the same reasons that her NYSHRL constructive discharge claim fails.  Second, discovery has revealed that the conduct complained of was no more than a petty slight or trivial inconvenience – especially considering the fact that it took place in a social context away from the workplace and as part of a goodbye.  Accordingly Pryor's NYCHRL hostile work environment claim fails as well.

As demonstrated at Point III below, J&A is also entitled to summary judgment on Pryor's NYSHRL claim based upon the Faragher/Ellerth doctrine because: (i) J&A exercised reasonable care in preventing and correcting any sexually harassing behavior; and (ii) Pryor unreasonably failed to take advantage of any preventive or corrective opportunities provided by J&A.  As J&A previously advised the Court, we do not believe it is necessary to amend the complaint to specify this defense.  Moreover, we believe that the defense is subsumed within the second affirmative defense of mitigation.  However, if the Court should find otherwise, J&A hereby moves to amend its answer to add the Faragher/Ellerth doctrine to amplify its second affirmative defense.

## THE FACTS

The following evidence adduced during discovery and attached to the certification of counsel dated October 27, 2014 ("Galterio Cert.") negates the complaint's allegations.

### 1. Pryor's Deposition Testimony And Other Admissions

Pryor made several admissions during her deposition testimony.  She admitted that she received and signed the J&A employment manual, which states, inter alia, that: (a) "no person will be discriminated against because of race, religion, color, sex, age, national origin, disability, military status, or any other characteristic protected by federal or state law;" (b) no form of harassment or discrimination shall be tolerated, including "unwanted physical contact of any kind, including sexual flirtations, touching, advances, or propositions;" and (c) provides a procedure for reporting and investigating sexual harassment.  See Pryor EBT[1] at 43-44 and Ex. 2 at JA 00046-48; 55-56; Galterio Cert. at ¶¶ 2 and 5, Ex. A and Ex. D.

Pryor admitted that she reported the incident with Tseng to J&A's office manager.  See Pryor EBT at 170. According to Pryor, her "psychologist was deeply upset and told me to tell them."  Id.  He supposedly told her that she should not come back to work because of Tseng. Pryor EBT at 180.  Pryor incredibly testified that she was not concerned about the physical assault of her boyfriend, which was just an "afterthought" at the time.[2]   Pryor EBT at 174.

Pryor admitted that she attended a meeting on June 6, 2013 in which the incident with Tseng was discussed.  See Id.   She confirmed that she asked that Tseng not be told that she reported the incident.  Pryor EBT at 188-89.  She also admitted that J&A told her that arrangements would be made to switch Tseng as her supervisor if she wished.  Pryor EBT at 172. She testified that she had every intention of returning to work.  Pryor EBT at 194, 197.  And, the

---

[1]        Deposition of Katherine Pryor attached as Ex. A to the Galterio Cert at ¶ 2.

[2]        All of this testimony totally conflicts with Pryor's psychologist's testimony.  See Section 2, infra.

only credible evidence is that J&A was always willing to do so.  See infra at section 4.

Pryor admitted that, except for the single incident in which Tseng touched her hand and hugged and kissed her goodbye, there were no other incidents of harassment.  See Pryor EBT at 63.  She also admitted that the single incident of alleged harassment occurred out of the office with no J&A employee present, after regular business hours in a restaurant where they were the only two patrons.  Pryor EBT at 131-132.   Pryor never told Tseng that he could not touch her hand.  Id. at 150.  His single hug was allegedly just below her shoulders.  Id. at 151; 154.  He purportedly gave her two goodbye kisses, one on each side of the middle of her neck.  Id. at 151-52.

Pryor further admitted that Tseng never told her he could help her career in exchange for a sexual favor.  See Pryor EBT at 148.  She admitted she was not fired from J&A.  Id. at 174.

In addition to her sworn testimony, Pryor's own office emails reveal admissions against her interest.  They demonstrate that the conduct of which she complains did not alter her working conditions.  In fact, Pryor made it clear that she was going to be returning to work despite the incident.  Thus, unlike J&A's motion to dismiss, and in stark contrast to footnote 3 of the Court's order denying that motion (which was based upon the four corners of Pryor's complaint), the evidence on the instant motion demonstrates that Pryor did not perceive the encounter with Tseng to be severely abusive.

On Thursday, June 6, 2013 – three days after the alleged incident – Pryor wrote directly to Tseng and stated: "Thank you so much, Jeffrey.  I really appreciate that.  I will check in and let you know how I am doing throughout the week.  I am going to come back and feel so much better.  I just know that this is what I need."  Galterio Cert. at ¶ 6, Ex. E; JA 00115.  (Emphasis supplied.)

On Thursday, June 6, 2013 – three days after the alleged incident – Pryor wrote to two other J&A employees and stated:  "I will be working from home the next two days then I'm flying off the radar for vacation on the sunny beach.  <u>See you guys when I get back</u>."  Galterio Cert. at ¶7 and Ex. F; JA 00123.  (Emphasis supplied.)

On Thursday, June 6, 2013 – three days after the alleged incident – Pryor wrote to another J&A employee and stated:  "I am sorry that I am gone.  <u>I will definitely look into this after vacation.  I am heading to Virginia Beach so hopefully I will come back with a nice tan and totally relaxed</u>!  When that employee replied, "Have fun Katherine!" Pryor replied:  "Thank you so much Daniella!  I really appreciate  <u>I will see you when I get back!!!!</u>"  Galterio Cert. at ¶ 8, Ex. G; JA 00127-28.  (Emphasis supplied.)[3]

### 2. <u>Dr. Scholler's Testimony</u>

Pryor's claim for constructive discharge is premised entirely upon the allegation that her psychologist, William Scholler, advised her that returning to work was detrimental to her health.  <u>See</u> Complaint at ¶ 35; Galterio Cert. at ¶ 12, Ex. K.  However, Scholler admitted that the incident with Tseng did <u>not</u> make it detrimental to her health to return to work.  Instead, the facts reveal that he advised Pryor to consider an emergency leave of absence because she was in danger of further physical abuse by her boyfriend, who had physically assaulted her a week prior, and because she needed to seek treatment for alcohol abuse – <u>not</u> because Tseng allegedly "hit" on her outside of the office.

---

[3]      It should also be noted that, contrary to Pryor's allegation that Tseng invited her out for a drink for the supposed purpose of "hitting" on her (<u>see</u> complaint at 26), Pryor's very emails to Tseng on June 3, 2013 – the day of the incident – evidence that it was <u>Pryor</u> who approached Tseng.  She began at 11:32am by asking Tseng "[c]ould you let me know if you have a few minutes to talk this afternoon?"  Tseng responded 5 minutes later:  "Sure.  Be more than happy to do so, either we can go out or do it wherever you like."  Pryor responded one minute later:  "Okay!  Would you like to grab lunch around 1pm?  Is that too late?"  Tseng then responded one minute later:  "I supposed to go out lunch with JD and Larry.  Sorry."   Galterio Cert. at ¶ 9, Ex.  H; JA 00117.  As a result of this exchange, the two went out later in the afternoon.

Scholler testified that he saw Pryor on June 5, 2013 – two days after the incident in question. During that session, Pryor reported to Scholler that her boyfriend had punched her in the face on Memorial Day, gave her a black eye, and was charged with a felony. Pryor also reported that "her boss hit on her," but that she did not yet report the incident to J&A "because I do not think it will happen again." Scholler EBT[4] at 56-64; Galterio Cert. at Ex. B.

At the June 5, 2006 session, Scholler did <u>not</u> tell Pryor that it was unsafe for her to go back to work because of the incident with Tseng. He did <u>not</u> tell her to report the incident with Tseng. There is no note in Dr. Scholler's file to such effect, and he testified that he would probably have made a notation had he so advised her. Scholler EBT at 59. To the contrary, Scholler had no recollection of telling Pryor that Tseng had made her work environment unsafe or intolerable. <u>Id</u>. at 62-63. On this score, he could only recall that they discussed the topic of Pryor obtaining treatment for alcoholism and taking a leave of absence from work under the FLMA because she was in physical danger of another assault by her boyfriend. <u>Id</u>. at 60-61.

Scholler's next session with Pryor was on June 26, 2013 – after she obtained counsel. During that session, she reported that Tseng hugged her, kissed her neck, and tried to kiss her on the mouth. She did <u>not</u> describe the incident as a sexual assault. Scholler EBT at 66.

Again, Scholler testified that he did <u>not</u> tell Pryor that it was unsafe for her to go back to work on June 26, 2013. There is no note in his file to such effect, and he would have made a notation had he so advised her. Scholler EBT at 71-72. Scholler also stated: "<u>If I told her not to go back to work, it goes against the thrust of my mindset. And it would go against my practice of not telling people what to do, unless it's a safety issue.</u>" <u>Id</u>. at 73. (Emphasis supplied.)

On July 25, 2013, Pryor emailed Scholler to ask him to draft a letter to assist her in obtaining unemployment benefits. Scholler then drafted a letter stating that he recommended

---

[4]      Deposition of William Scholler attached as Ex. B to the Galterio Cert at ¶ 3.

that Pryor take an emergency leave from work solely because of the incident of domestic abuse at the hands of her boyfriend.  The letter made no mention of the incident with Tseng or J&A. Only when Pryor prompted Scholler to revise the letter did he include a reference to Tseng. Scholler EBT at 82-85; Galterio Cert. at Ex. I.

Scholler's first statement after reading the revised letter was "Geez."  Scholler EBT at 93. He then went on to testify that he was just "trying to support her in the goal of getting unemployment," and did not know that his letter "would have such repercussions."  Id. at 95.  He stated that he would not have used the words "sexually assaulted" if he had to write the letter again.  He also admitted that his statement "it was my assessment that Ms. Pryor was in an unsafe work environment" was "narrow."   He said so only because he felt that Pryor was vulnerable to any advance, no matter how insignificant.  Id. at 96.   He admitted that he merely adopted Pryor's words, and did not use his own, when drafting the letter.  Id. at 94-95.

Scholler also testified that he was never in a position to conclude that Pryor's work environment was unsafe:  "I can't say the degree of unsafety in her work environment, because I don't know the seriousness of the sexually inappropriate behavior that she described on June 26th.  Scholler EBT at 100.  (Emphasis supplied.)  And, most tellingly, when asked whether the allegation in Pryor's complaint – to wit: that, as a result defendants' sexual harassment and assault of the plaintiff, Scholler advised her that returning to work at J&A would be detrimental to her health – was truthful, Scholler answered:  "No."  Id. at 107.

### 3.   Ms. Tatlybaeva's Testimony

The testimony of Albina Tatlybaeva, the waitress who served Pryor and Tseng at the time of the incident in question, was also revealing.  Ms. Tatlybaeva testified that the restaurant was

not crowded at the time that Tseng and Pryor were present.  Tatlybaeva EBT[5] at 14.  Tseng and

Pryor sat at one of the high tables on the floor.  Id. at 14.  Ms. Tatlybaeva was no more than 12 to

15 feet away from Tseng and Pryor at all relevant times.  Id. at 19.

Despite her close proximity to Tseng and Pryor, Ms. Tatlybaeva did not see Tseng make

any kind of sexual advance against Pryor.  Tatlybaeva EBT at 17-20.  She had no recollection of

Tseng attempting to grab Pryor.  Id. at 18.  She did not see Tseng attempt to kiss Pryor, and she

did not see Pryor attempt to pull away from Tseng.  Id. at17-20.  She did not observe anything

out of the ordinary, id. at 22 , – let alone an "extraordinarily severe" incident of sexual

harassment.

### 4.  J&A's Efforts To Accommodate Pryor

There is no dispute that J&A made efforts to accommodate Pryor.  Even after she

retained an attorney, J&A still attempted to accommodate her return.

In a letter dated June 21, 2013 – prior to the commencement of the instant action – J&A

wrote a letter to Pryor's counsel.  Among other things, that letter stated:

> If Ms. Pryor wishes, I propose a meeting with the parties and counsel to clear the air.  I am confident that we can reach a solution that allows Ms. Pryor to continue her previous successful employment status here.  This may result simply from a meeting, or with or without a meeting, it may require an accommodation such as a change in who she reports to, a change in the floor she works on, or other such accommodations.  Regardless, we want her to feel comfortable returning and there would be no negative repercussions on her opportunities for advancement here.  We hope that your client will consider returning.  Under these circumstances, we do not believe that any payment to Ms. Pryor is warranted on account of her allegations [of sexual harassment].

Galterio Cert. at Ex. J; JA 00011-14.  (Emphasis supplied.)  However, at no time did Pryor or her

counsel attempt to negotiate her return to work on any terms.

---

[5]        Deposition of Albina Tatlybaeva attached as Ex. C to the Galterio Cert at ¶ 4.

## <u>ARGUMENT</u>

Fed.R.Civ.P. 56(a) provides that a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Where the movant shows a prima facie entitlement to summary judgment, "the burden shifts to the nonmovant to point to record evidence creating a genuine issue of material fact." <u>Salahuddin v. Goord</u>, 467 F.3d 263, 273 (2d Cir.2006).

"[T]he nonmovant cannot rest on allegations in the pleadings and must point to specific evidence in the record to carry its burden on summary judgment." <u>Id</u>.; <u>see</u> <u>McPherson v. N.Y.C. Dep't of Educ.</u>, 457 F.3d 211, 215 n. 4 (2d Cir.2006) ("[S]peculation alone is insufficient to defeat a motion for summary judgment."); <u>Byrnie v. Town of Cromwell, Bd. of Educ.</u>, 243 F.3d 93, 101 (2d Cir.2001) ("Even where facts are disputed, in order to defeat summary judgment, the non-moving party must offer enough evidence to enable a reasonable jury to return a verdict in its favor").

It is against this backdrop that the Court must now revisit dismissal of Pryor's third through fifth claims for relief at the summary judgment stage with the benefit of discovery.

## I

### <u>J&A IS ENTITLED TO SUMMARY JUDGMENT ON PRYOR'S CLAIMS FOR HOSTILE WORK ENVIRONMENT AND CONSTRUCTIVE DISCHARGE UNDER THE NYSHRL</u>

#### A.  Hostile Work Environment

A claim for hostile work environment under the NYSHRL is analyzed under the same standards as a federal claim under Title VII.  <u>See</u> <u>Kelly v. Howard I. Shapiro & Associates Consulting Engineers, P.C.</u>, 716 F.3d 10 (2d Cir. 2013)("The standards for evaluating hostile work environment and retaliation claims are identical under Title VII and the NYSHRL");

Summa v. Hofstra University, 708 F.3d 115 (2d Cir. 2013)("Hostile work environment claims under both Title VII and the NYSHRL are governed by the same standard").

To state a viable claim based on a hostile work environment, a plaintiff must show that the conduct at issue: (1) is objectively severe or pervasive; that is, creates an environment that a reasonable person would find hostile or abusive; and (2) creates an environment that the plaintiff subjectively perceives as hostile or abusive; and (3) creates such an environment because of the plaintiff's sex.  See Anderson v. Davis Polk & Wardwell LLP, 2013 WL 1809443 (S.D.N.Y. Apr 29, 2013) (NO. 10 CIV. 9338 NRB).

Isolated acts, unless "extraordinarily severe," do not meet the threshold of objective severity or pervasiveness as a matter of law.  See Faragher v. City of Boca Raton, 524 U.S. 775, 786–88, 118 S.Ct. 2275 (1998); Alfano v. Costello, 294 F.3d 365 (2d Cir.2002)("a plaintiff alleging a hostile work environment 'must demonstrate either that a single incident was extraordinarily severe, or that a series of incidents were 'sufficiently continuous and concerted' to have altered the conditions of her working environment"); Cruz v. Coach Stores, Inc., 202 F.3d 560 (2d Cir. 2000)(same).  The Second Circuit does not recognize a single incident as being extraordinarily severe unless it constitutes an "intolerable alteration" of the plaintiff's working conditions.  See Mathirampuzha v. Potter, 548 F.3d 70, 79 (2d Cir. 2008).

In keeping with the foregoing, where, as here, a single, isolated incident involving a "touch" or a "kiss" is the sole basis upon which a plaintiff's hostile work environment claim is grounded, it is insufficient as a matter of law to sustain a claim under the NYSHR.  Second Circuit and Southern District case law to this effect is abundant.  See Vito v. Bausch & Lomb Inc., 403 Fed. Appx. 593 (2d Cir. 2010)(single incident of improper touching between female employee and male supervisor, which involved supervisor touching plaintiff's left shoulder and

breast held insufficient to state a hostile work environment claim); Carter v. State of New York, 151 Fed. Appx. 40 (2d Cir. 2005)(three kisses on female employee's cheek in a two-year period held not sufficiently severe or pervasive to support hostile work environment claim); Cook v. New York City Department of Education, 90 Fed. Appx. 562 (2d Cir. 2004)(one overtly sex-based act consisting of a kiss did not meet threshold of severity or pervasiveness necessary to sustain valid claim for hostile work environment); Wilson v. New York City Police Dept., 2013 WL 878585 (S.D.N.Y. Feb 06, 2013) (NO. 09 CIV. 2632 ALC HBP), report and recommendation adopted, 2013 WL 929654 (S.D.N.Y. Mar 11, 2013)(summary judgment granted to employer where plaintiff alleged that co-worker "touch[ed] my hand in a sexual manner, sort of in a caressing way," and another "r[a]n up to me and kiss[ed] me on the cheek"); Prince v. Cablevision Sys. Corp., No. 04 Civ. 8151(RWS), 2005 WL 1060373, at *6–7 (S.D.N.Y. May 6, 2005)(generalized "sex talk" at work and "a single incident of harassment" involving an attempted kiss held insufficient); Mark v. Mount Sinai Hosp., 85 F. Supp.2d 252 (S.D.N.Y. Feb 18, 2000)("a platonic hug or kiss at a party falls within the realm of culturally appropriate social behavior absent a showing that the particular recipient indicated the contact was unwelcome")  See also Sales v. YM & YWHA of Washington Heights and Inwood, 2003 WL 164276, at *2-6 (S.D.N.Y.2003) (granting summary judgment to defendant with regard to plaintiff's Title VII claim where plaintiff's evidence consisted of eight incidents including sexual advances, an attempted hug and a marriage proposal by a co-worker). Feliciano v. Alpha Sector, Inc., 2002 WL 1492139, at *8 (S.D.N.Y.2002) (granting summary judgment to defendant where plaintiff's evidence consisted of compliments, repeated requests to date, an attempted hug, a kiss and a stated desire to "lay with" plaintiff by her supervisor).

Courts from other jurisdictions have also consistently ruled.  See Uppal v. Hospital Corp. of America, 482 Fed.Appx. 394 (11th Cir. 2012)(single incident of male supervisor allegedly placing arm around her in unwelcomed sexual manner did not support hostile work environment claim); Paul v. Northrop Grumman Ship Systems, 309 Fed.Appx. 825(5th Cir. 2009)(holding that single incident in which coworker "chested up" to female employee's breasts in 30-second confrontation, then followed employee as she tried to separate herself and placed his arm around her waist then rubbed his pelvic region across her hips and buttocks, was not severe or pervasive); Gibson v. Potter, 264 Fed. Appx. 397 (5th Cir.2008) (supervisor's "sex talk," requests for dates with female employee, and offer of telephone number, together with single incident in which supervisor allegedly touched employee's buttocks and made suggestive comments, was not severe and pervasive); LeGrand v. Area Resources for Community & Human Services, 394 F.3d 1098 (8th Cir.2005)(holding no severe or pervasive harassment where defendant kissed the plaintiff on the mouth, grabbed the plaintiff's buttocks, reached for plaintiff's genitals, and suggested that the plaintiff engage in sexual activity with him); Hockman v. Westward Communications, LLC, 407 F.3d 317 (5th Cir.2004)(no viable hostile work environment claim where co-worker grabbed plaintiff's "breasts and behind" and "once held her cheeks and tried to kiss her"); Brooks v. City of San Mateo, 229 F.3d 917, 921, 926–27 (9th Cir.2000) (collecting cases and determining that a single incident where the plaintiff's supervisor forced his hand under the plaintiff's shirt and fondled her breast for a few seconds insufficient to establish a hostile work environment claim); Hopkins v. Balt. Gas & Elec. Co., 77 F.3d 745, 747, 753 (4th Cir.1996) (conduct, including a kiss on the mouth and holding a magnifying glass over the employee's genitals, was insufficient to state a hostile work environment claim); Saxton v. AT & T Co., 10 F.3d 526, 528–34 (7th Cir. 1993) (allegations that a supervisor took the plaintiff to a

jazz club, placed his hand on her thigh, kissed her, and later asked her on a date and lurched at

her from behind some bushes were not sufficiently severe as to create a hostile work

environment); Weiss v. Coca–Cola Bottling Co., 990 F.2d 333, 337 (7th Cir. 1993) (allegations

that employee called plaintiff a "'dumb blond,' put his hand on her shoulder several times, and

attempted to kiss her in a bar," amounted to relatively isolated incidents incapable of

withstanding summary judgment).[6]

---

[6] See also Head v. Vilsack, 2013 WL 183687 (E.D.N.C. Jan 17, 2013) (plaintiff could not
establish hostile work environment where defendant hugged her, kissed her, and brushed his
hands past her breasts and buttocks); Chavers v. Shinseki, 667 F.Supp.2d 116 (D.D.C. Nov 05,
2009)(". . . the Court concludes that Rogers' alleged conduct was similarly 'deplorable but not so
severe or persistent as to constitute a change in terms and conditions of employment'"); Akonji
v. Unity Healthcare, Inc., 517 F.Supp.2d 83, 97–98 (D.D.C.2007) (no harassment where Plaintiff
alleged that a co-worker "touched her buttocks, and tried to kiss her"); Fowler v. District of
Columbia, 404 F.Supp.2d 206, 211 (D.D.C.2005), aff'd, 210 Fed. Appx. 4 (D.C.Cir.2006);
(plaintiff's colleague allegedly had "'announced' during a faculty meeting that he was 'turned on
by the dress that a teacher was wearing' and then 'squeezed the teacher's thigh'"); Murray v. City
of Winston-Salem, North Carolina, 203 F.Supp.2d 493 (M.D.N.C. 2002)(supervisor's alleged
conduct of commenting on how city employee looked in jeans, briefly putting his arm around
employee, touching employee's thigh twice, and making "ummm" noises and staring as
employee walked past held insufficient to satisfy severe or pervasive standard); Saidu-Kamara v.
Parkway Corp., 155 F.Supp.2d 436 (E.D.Pa. 2001)(assistant manager's alleged sexually
harassing conduct of touching female employee's breasts and buttocks and making suggestive
comments was not sufficiently severe or pervasive); Morales-Evans v. Administrative Office of
the Courts of New Jersey, 102 F.Supp.2d 577 (D.N.J. 2000)(male supervisor did not create
sexually hostile environment as result of four or five kisses on cheek and general remarks made
in presence of others connecting sneezing and intercourse and describing his visit to nude beach);
McGraw v. Wyeth–Ayerst Labs., Inc., 1997 WL 799437 (E.D.Pa. Dec. 30, 1997) (supervisor
kissing plaintiff without consent, forcing tongue into her mouth, touching her face, and
repeatedly asking her out on dates insufficient to create hostile work environment); Tatum v.
Hyatt Corp., 918 F. Supp. 5, 6–7 (D.D.C.1994) (co-worker wrapped his arms around plaintiff's
neck and body, rubbed against plaintiff as if to simulate sexual intercourse, made comments
about her physical attractiveness, and placed a piece of ice in her skirt pocket); Caleshu v.
Merrill Lynch, Pierce, Fenner & Smith, Inc., 737 F.Supp. 1070 (E.D.Mo. Mar 30, 1990), aff'd,
985 F.2d 564 (8th Cir.1991), cert. denied, 504 U.S. 918, 112 S.Ct. 1963 (1992) (defendant kissed
plaintiff on two occasions and touched her thigh on two occasions while outside office, told her
two off-color jokes, invited himself to dinner, invited her to work-related dinner, required her to
pick him up at airport on one occasion, gave her birthday card and gift, and showed up at bar
while she was there).

The instances in which a single act has been found sufficient to support a hostile workplace claim are few and far between.  Indeed, in its prior decision denying defendants' motion to dismiss, the Court highlighted only two such cases.  However, the facts of those cases are readily distinguishable from the case at bar.

For example, <u>Scott v. City of New York D.O.C.</u>, 641 F.Supp.2d 211, 226 (S.D.N.Y.2009) is inapposite for precisely the reasons stated by the Court in <u>Lozosky v. Keystone Business Products, Inc.</u>, 2013 WL 5744896  *4-5 (M.D. Pa. Oct 23, 2013):

> The hugs and kisses alleged by plaintiff do not rise to the level of severity or pervasiveness required to sustain a sexual harassment claim under Title VII. Viewing the allegations with a view towards social context, a hug and kiss in greeting are not outside the scope of socially acceptable and non-abusive actions people take upon greeting a longtime friend or acquaintance. <u>While plaintiff may have felt uncomfortable at being greeted this way by her boss, the complaint does not adequately allege that the greetings changed the terms or conditions of her employment or create an environment which was severely and pervasively hostile.</u>
>
> Plaintiff, with respect to the December 29, 2011 meeting at Morda's house, points to <u>Scott v. City of New York D.O.C.</u>, 641 F.Supp.2d 211, 226 (S.D.N.Y.2009) for the proposition that one incident of kissing can create a hostile work environment. (Doc. No. 19 ). That is so, but the facts in that case were not like the ones here. There, the president of the plaintiff's union forced his tongue into her mouth twice and told her to undress a mere hour before a union attorney was to represent her in a disciplinary proceeding. Id. <u>The acts taken by the aggressor in that case were overtly sexual, and the plaintiff was obviously relying on union representation at the time of the harassment. Thus, that single incident was reasonably characterized as an "extraordinarily severe" single event which "materially altered the conditions of Scott's union membership."</u> Id.
>
> Although plaintiff may well have felt uncomfortable at being hugged and kissed while alone at Morda's home, the allegations do not show that the December 29, 2011 meeting was overtly sexual as in the Scott case. <u>There is no allegation that she was kissed on the mouth on that date, and even assuming that she was, there is no allegation that Morda "forced his tongue into her mouth" as in Scott. While a kiss in greeting may be inappropriate, it is far less severe than what occurred in Scott. Additionally, the kiss and hug in the instant matter were made in greeting before plaintiff even knew the topic of the meeting with Morda, which makes the facts here even more unlike those in Scott, where</u>

16

> the plaintiff knew that her employment was at risk and that she was reliant on the person accosting her and telling her to undress in front of him.

(Emphasis supplied.)  These words ring equally true in the case at bar.

Similarly, the case of Howley v. Town of Stratford, 217 F.3d 141, 154-55 (2d Cir.2000) is distinguishable.  Once again, in that case, the single incident could be construed as materially altering the plaintiff's employment:

> Holdsworth did not simply make a few offensive comments; nor did he air his views in private; nor were his comments merely obscene without an apparent connection to Howley's ability to perform her job. Although Holdsworth made his obscene comments only on one occasion, the evidence is that he did so at length, loudly, and in a large group in which Howley was the only female and many of the men were her subordinates. And his verbal assault included charges that Howley had gained her office of lieutenant only by performing fellatio. It cannot be concluded as a matter of law that no rational juror could view such a tirade as humiliating and resulting in an intolerable alteration of Howley's working conditions: In an occupation whose success in preserving life and property often depends on firefighters' unquestioning execution of line-of-command orders in emergency situations, the fomenting of gender-based skepticism as to the competence of a commanding officer may easily have the effect, among others, of diminishing the respect accorded the officer by subordinates and thereby impairing her ability to lead in the life-threatening circumstances often faced by firefighters.
>
> In addition, Howley presented evidence that Holdsworth had perpetrated repeated acts of harassment even after the April 1995 incident in order to undermine further her subordinates' respect for her, and hence to cast doubt on the degree of compliance and cooperation she could expect from them.

(Emphasis supplied.)

Now that discovery is complete, the facts do not support a finding that the incident in question was "extraordinarily severe."  Unlike Scott and Howley, there is no evidence whatsoever that Pryor's employment was materially altered as a result of the incident.  In fact, the only evidence that Pryor alleges in this regard is that her psychologist told her that returning to work would be detrimental to her health, which her psychologist testified is not even true.  And, even if it were, it would still not be evidence that Pryor's employment was materially altered.  She was not terminated.  She was not undermined in front of other employees.  She did

not lose her position.  She did not return to work even though J&A offered to accommodate her situation.  Accordingly, summary judgment is warranted on Pryor's hostile work environment claim, and no rational juror could find otherwise.

**B.  <u>Constructive Discharge</u>**

Where, as here, a plaintiff fails to allege facts sufficient to state a valid claim for hostile work environment under the NYSHRL, she necessarily fails to state a claim for constructive discharge.  <u>See</u> <u>Fincher v. Depository Trust & Clearing Corp.</u>, 604 F.3d 712, 725 (2d Cir.2010) (because plaintiff failed to raise a triable issue of fact as to her hostile work environment claim, "her claim of constructive discharge also fails"); <u>accord</u>, <u>Gaffney v. City of New York</u>, 101 A.D.3d 410, 955 N.Y.S.2d 318 (1st Dep't 2012) (same).

Here, all of Pryor's claims for constructive discharge are pled in conjunction with, and not independently of, her hostile work environment claims.  Accordingly, for the same reasons that Pryor's hostile work environment claim fails under the NYSHRL, so does her corollary claim for constructive discharge, which must also be dismissed with prejudice.

Moreover, a hybrid hostile work environment/constructive discharge claim "entails something more [than a pure hostile work environment claim]: A plaintiff who advances such a compound claim must show working conditions so intolerable that a reasonable person would have felt compelled to resign." <u>PA State Police v. Suders</u>, 542 U.S. 129, 146, 124 S. Ct. 2342, 2354 (2004); <u>see</u> <u>also</u> <u>Edwards v. Huntington Union Free School Dist.</u>, 957 F. Supp.2d 203, 213-14 (E.D.N.Y. 2013), <u>citing</u> <u>Petrosino v. Bell Atl.</u>, 385 F.3d 210, 229 (2d Cir.2004).

There is no evidence that the incident between Pryor and Tseng was such that a reasonable person would have felt compelled to resign.  In addition to the evidence that negates her hostile work environment claim, the documentary evidence – Pryor's own emails – clearly

show that she was not resigning, but merely taking time off to recuperate from the incident of assault at the hands of her boyfriend.  Pryor even admitted that she was prepared to return to work if she no longer had to report to Tseng, which J&A was prepared to do.  If a reasonable person would have been compelled to resign, she would not have written those emails three days after the incident occurred, and she would not have been prepared to return to work with the mere switch of a supervisor.

**II**

**J&A IS ENTITLED TO SUMMARY JUDGMENT
ON PRYOR'S CLAIMS FOR HOSTILE WORK ENVIRONMENT
AND CONSTRUCTIVE DISCHARGE UNDER THE NYCHRL**

**A. Constructive Discharge**

New York state courts have articulated a NYCHRL constructive discharge standard that is identical to the Title VII and NYSHRL standards.  See E.E.O.C. v. Bloomberg L.P., 2014 WL 2112038 (S.D.N.Y. Apr 28, 2014); Lambert v. Macy's E., Inc., 84 A.D.3d 744, 746, 922 N.Y.S.2d 210 (2d Dep't 2011) (holding that summary judgment was appropriate on plaintiff's constructive discharge claim under the NYCHRL because defendant "did not deliberately make [plaintiff's] working conditions so intolerable that a reasonable person would have felt compelled to resign"); Short v. Deutsche Bank Sec., Inc., 79 A.D.3d 503, 504, 913 N.Y.S.2d 64 (1st Dep't 2010) ("To establish a constructive discharge [under the NYCHRL], plaintiff was required to produce evidence that her employer deliberately created working conditions so intolerable, difficult or unpleasant that a reasonable person would have felt compelled to resign") (internal quotation marks and citation omitted).

For the reasons set forth at Point IB above, because there is insufficient evidence to support a constructive discharge claim under NYSHRL, Pryor's NYCHRL constructive discharge claim must also fail as a matter of law.

B. **Hostile Work Environment**

To state a valid claim for hostile work environment under the NYCHRL, a plaintiff must allege and establish discriminatory conduct that exceeds what a reasonable victim of discrimination would consider petty or trivial.  See Kim v. Goldberg, Weprin, Finkel, Goldstein, LLP, 120 A.D.3d 18, 987 N.Y.S.2d 338 (1st Dep't 2014)( law firm's conduct toward employee, an attorney, was not severe and pervasive enough to create objectively hostile or abusive environment, precluding employee's claims of gender- and pregnancy-based hostile work environment claims under New NYSHRL and NYCHRL); Harris v. NYU Langone Medical Center, 2013 WL 3487032 (S.D.N.Y. Jul 09, 2013)(granting motion to dismiss NYCHRL hostile work environment claim); Lambert v. Macy's East, Inc., 34 Misc.3d 1228(A), 951 N.Y.S.2d 86 (Sup. Ct. Kings Co. 2010), aff'd, 84 A.D.3d 744, 922 N.Y.S.2d 210 (2d Dep't 2011) (granting motion for summary judgment to dismiss NYCHRL hostile work environment claim).

Although the foregoing standard is not a stringent as the "severe or pervasive" test applicable to claims under the NYSHRL, courts have made it abundantly clear that the NYCHRL "is not a general civility code and petty slights and trivial inconveniences are not actionable under the NYCHRL."  Campbell v. Cellco Partnership, 860 F.Supp.2d 284 (S.D.N.Y. Feb 07, 2012)(emphasis supplied). See also Davis-Bell v. Columbia University, 851 F.Supp.2d 650 (S.D.N.Y.), appeal dismissed (2d Cir. 2012)(same); Phillip v. City of New York, 2012 WL 1356604 (E.D.N.Y. Apr 19, 2012)(same); Price v. Cushman & Wakefield, Inc., 829 F.Supp.2d 201 (S.D.N.Y. 2011)(same).

An isolated, uninvited touch on the hand or kiss on the neck falls squarely within the meaning of a "petty slight" or "trivial inconvenience" under the NYCHRL.  Thus, in Yee Sing Li v. Educ. Broad. Corp., Index No. 115948/2010, 2011 N.Y. Misc. LEXIS 3522, at *14–15 (N.Y.

Sup.Ct. June 30, 2011), the court rejected a hostile work environment claim under the NYCHRL where the defendant had merely stroked plaintiff's arm and stated "[a]sian skin is so soft," and "you love it when a hot guy like me touches you."   See also Ardigo v. J. Christopher Capital, LLC, 2013 WL 1195117 (S.D.N.Y. Mar 25, 2013)(dismissing complaint where allegations of hostile work environment consisted of "sporadic insensitive comments"); Fullwood v. Assoc. for the Help of Retarded Children, Inc., 08 Civ. 6739(DAB), 2010 WL 3910429, at *9 (S.D.N.Y. Sept. 28, 2010) (granting summary judgment for defendants where plaintiff alleged that defendant made offensive racial comments on four separate occasions over a two-year period); Diagne v. New York Life Ins. Co., 2010 WL 5625829, at *16–17 (S.D.N.Y. Dec. 8, 2010) (granting summary judgment for defendant where plaintiff alleged that defendant made racial slurs "[s]ometimes" because the evidence was "of such a minimal character and supported by such inconclusive and vague evidence that a reasonable jury would have to conclude that it represents, at best, 'petty slights or trivial inconveniences'"); Wilson v. N.Y.P. Holdings, Inc., 05 Civ. 10355(LTS), 2009 WL 873206 (S.D.N.Y. Mar. 31, 2009) (granting summary judgment on hostile work environment claim where plaintiffs' supervisors commented over a number of years that "training females [was] like training dogs" and that "women need to be horsewhipped," and referred to female celebrities as "whores" and "sluts").

Here, Pryor has no claim for hostile work environment under the NYCHRL.  Considering the social context in which the incident in question occurred, and considering that it did not alter Pryor's employment, Tseng's conduct was nothing more than petty or trivial.  Accordingly, J&A is entitled to summary judgment as a matter of law.

**III**

**J&A IS ENTITLED TO ASSERT THE FARAGHER/ELLERTH DEFENSE AND
SHOULD BE PERMITTED TO AMEND ITS ANSWER IF NECESSARY TO DO SO**

### A.  The Defense

An employer is liable *ipso facto* for its supervisor's sexual harassment only if that

harassment took the form of a tangible employment action. See Burlington Industries, Inc. v.

Ellerth, 524 U.S. 742, 118 S.Ct. 2257 (1998).  There is no tangible employment action where, as

here, the plaintiff is merely asserting a constructive discharge.  See Pa. State Police v. Suders,

542 U.S. 129, 148, 124 S. Ct. 2342, 2355, 159 L.Ed.2d 204 (2004) (constructive discharge not a

tangible employment action when the offending supervisor took no official act against the

plaintiff); Caridad v. Metro–North Railroad, 191 F.3d 283, 294 (2d Cir.1999) (constructive

discharge not a tangible employment action).

In a pure constructive discharge case such as this, J&A is entitled to summary judgment

if it can establish that: (i) it exercised "reasonable care in preventing and correcting any sexually

harassing behavior"; and (ii) "the plaintiff employee unreasonably failed to take advantage of

any preventive or corrective opportunities provided by the employer or to avoid harm

otherwise." Ellerth, 524 U.S. at 765, 118 S.Ct. at 2270.  See also Audrey v. Career Inst. of Health

& Tech., No. 06–CV–5612, 2010 WL 10094570, at *17 (E.D.N.Y. Jan. 12, 2010) (granting

summary judgment as to plaintiff's hostile work environment claim under NYSHRL based on the

Faragher/Ellerth defense), report and recommendation adopted, No. 06–CV–5612, 2014 WL

2048310 (E.D.N.Y. May 18, 2014); Barnum v. New York City Transit Authority, 62 A.D.3d

736, 878 N.Y.S.2d 454 (2d Dep't 2009)(holding that, under NYSHRL, "it is a defense to a claim

of harassment arising from the conduct of a supervisory employee that the employer exercised

reasonable care to prevent and correct promptly the discriminatory conduct . . . and that the

22

plaintiff unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to otherwise avoid harm"). After taking discovery, it has become apparent that there are no disputed issues of fact in this regard.

Here, J&A has an appropriate anti-harassment policy that is documented in an employee manual which Pryor has now admitted that she received and signed.  Moreover, Pryor admitted that she told J&A not to take any action against Tseng while she was taking time off, Pryor never returned to work after taking time off, and Pryor's deposition testimony revealed that she did not give J&A the ability to provide preventative and/or corrective opportunities, which were undisputedly offered to her.  See Cajamarca v. Regal Entertainment Group, 863 F. Supp.2d at 248-252.  See also Finnerty v. William H. Sadlier, Inc., 176 Fed. Appx. 158 (2d Cir. 2006).

**B.  No Amendment Is Required**

It is not necessary for J&A to amend its answer to specify the Faragher/Ellerth defense. Indeed, Courts have allowed it even where it has not been specifically articulated. See Cajamarca v. Regal Entertainment Group, 863 F. Supp.2d at 249, fn.6 (". . . defendants have addressed the two-part test under Faragher/Ellerth, even without referring to it as such, and I therefore find that it has been properly raised").

Moreover, the defense has been held to be in the nature of a mitigation defense. See Pennsylvania State Police v. Suders, 542 U.S. 129, 124 S.Ct. 2342 (2014) ("Following Ellerth and Faragher, the plaintiff who alleges no tangible employment action has the duty to mitigate harm, but the defendant bears the burden to allege and prove that the plaintiff failed in that regard").

Here, the answer already contains a second affirmative defense of mitigation.  Courts have found this sufficient to include the Faragher/Ellerth defense.  As stated by the Court in

Howard v. City of Robertsdale, 168 Fed. Appx. 883 (11th Cir. 2006):

> We agree with the district court that Robertsdale did not waive the Ellerth - Faragher defense by not referring to it by name in its Answer. Robertsdale raised a general "failure to mitigate damages" defense, which we conclude was sufficient to assert the Ellerth - Faragher defense.  As the Supreme Court has held, "[f]ollowing Ellerth and Faragher, the plaintiff who alleges no tangible employment action has the duty to mitigate harm, but the defendant bears the burden to allege and prove that the plaintiff failed in that regard." Pennsylvania State Police v. Suders, 542 U.S. 129, 152, 124 S.Ct. 2342, 2357, 159 L.Ed.2d 204 (2004). Thus, the Ellerth - Faragher defense is clearly a mitigation defense, and Howard had ample "notice of the affirmative defense and a chance to rebut it," as required by Fed. R. Civ. Pro. 8(c). Grant v. Preferred Research, Inc., 885 F.2d 795, 797 (11th Cir.1989).

Accordingly, the defense has already been asserted.

## C. **Amendment**

In any event, leave to amend should be granted in this case if the Court so requires.  A proposed amendment is included with these motion papers.

Rule 15(a) of the Federal Rules of Civil Procedure provides that leave to amend a pleading more than 20 days after the initial pleading is within the court's discretion, and "shall be freely given when justice so requires." Fed.R.Civ.P. 15(a).

Denial of leave to amend must be based on some substantial reason, such as undue delay in seeking leave to amend, bad faith, or prejudice to the opposing party.  See State Teachers Ret. Bd. v. Fluor Corp., 654 F.2d 843, 856 (2d Cir.1981).  Mere delay, absent a showing of bad faith or undue prejudice, does not generally justify a denial of leave to amend. See Middle Atlantic Utilities Co. v. S.M.W. Dev. Co., 392 F.2d 380, 384 (2d Cir.1968).  This is so even if discovery has closed.  See Vysovsky v. Glassman, 2007 WL 3130562 (S.D.N.Y. Oct 23, 2007)("While Defendants' motion to amend their answer comes after the close of discovery, the additional affirmative defenses do not raise new areas of inquiry such that Plaintiffs are likely to be prejudiced by not having known of Defendants' intention to raise these affirmative defenses prior

24

to the close of discovery"); <u>Adamczyk v. City of Buffalo</u>, 1998 WL 89342, *2–3 (W.D.N.Y.1998) (granting the defendants' motion for leave to amend their Answer to assert a statute of limitations defense even though the motion had been made after the close of discovery).

In the case at bar, an amendment to the answer would not prejudice Pryor.  For the reasons stated above, J&A did not think it necessary to raise the defense specifically by name and had already placed Pryor on notice of a mitigation defense.  In addition, it was not until August of 2014 that Tseng retained his own attorney and J&A became free from any potential conflict of interest that may have arisen in asserting the defense.  Moreover, it was not until discovery was taken that Pryor admitted she wanted to return to work if her supervisor was switched.  Nor did Pryor object to its assertion when J&A recently brought it to the attention of the Court.  Finally, the Faragher/Ellerth defense does not raise any new issues that were not fully covered through document production, depositions, and other discovery.  Accordingly, there is no prejudice to Pryor.

## **<u>CONCLUSION</u>**

Based upon the foregoing reasons, defendants' motion should be granted, and the third, fourth and fifth claims for relief should be dismissed with prejudice in their entirety.

Dated: New York, New York
      October 27, 2014

JAFFE & ASHER LLP

  */s/ Gregory E. Galterio*
Gregory E. Galterio (GEG 0787)
600 Third Avenue, Ninth Floor
New York, New York 10016
Telephone:  (212) 687-3000
facsimile:  (212) 687-9639
ggalterio@jaffeandasher.co
*Attorneys for Defendant*
*Jaffe and Asher LLP*